IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TAMARA M. DERVIN,  )
on behalf of herself  )
and all others similarly situated,  )
  )
        Plaintiff  )
  )  Case No. 1:21-cv-04215
        v.  )
  )  Hon. Charles P. Kocoras
NBTY, INC., a Delaware corporation, and  )
NATURE'S BOUNTY, INC.,  )
a Delaware corporation,  )
  )
        Defendants.  )
  )

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

|  | Page |
|---|---|
| **BACKGROUND** | 3 |
| **ARGUMENT** | 7 |
| I. The Act explicitly preempts Plaintiffs claim. | 7 |
|     A. *Greenberg* explains the test for evaluating Plaintiff's claim. | 7 |
|     B. Plaintiff's claim flunks *Greenberg*'s test. | 9 |
|     C. Plaintiff cannot evade *Greenberg* by asserting that the Nutrient does not support healthy hair, skin, and nails. | 11 |
| II. Plaintiff's claim fails because she does not allege that she ever took biotin, much less allege in what way it failed to work for her. | 14 |
| **CONCLUSION** | 15 |

**INTRODUCTION**

The complaint asserts that Plaintiff was deceived by the label on a biotin dietary supplement. Her attorney filed this case later in the same year (2021) that the Ninth Circuit rejected one of his earlier biotin lawsuits as being preempted by federal law, and he does not hesitate to admit that his motive in filing the present case is to attack the Ninth Circuit's decision. Dkt. 18-2 at 31-35.

The Ninth Circuit's decision cannot fairly be challenged. It simply explains that the label claim made here—"Supports Healthy Hair, Skin & Nails"—is what is known under the Food, Drug, and Cosmetic Act (as amended by the Dietary Supplement Health and Education Act) (the "Act"), as a "structure/function claim" because it "merely describes the function or role of an ingredient or nutrient on the human body." So long as a supplement maker meets the Act's requirements for a structure/function claim, the claim can be made without second guessing by a state-law cause of action, because the Act expressly preempts those state-law claims.

Under the Act, there are three requirements. The first requirement is that the structure/function claim be substantiated. In the present case, the complaint *concedes* that it is not challenging Defendants' substantiation. The complaint itself establishes plenty of substantiation. It relies on a publication by the National Academy of Science explaining "clinical findings" that biotin deficiency causes hair and skin problems. The complaint acknowledges that such problems often occur if there is not enough biotin in the body or if the body cannot use it, and the complaint gives examples of how those things can happen. The complaint also discusses animal observations and case studies that substantiate Defendants' label claim.

The second requirement is that the supplement's label must also include a disclaimer specified in the Act. The disclaimer is included. The final requirement is that the

1

structure/function claim cannot make a disease claim—a claim that the product itself can cure or treat a disease. No disease claim was made here. The label does not mention any disease, and it includes the statement, "This product is not intended to diagnose, treat, cure, or prevent any disease."

Thus, the three requirements are met, so federal law authorizes the structure/function claim, but Plaintiff here (exactly like the plaintiff in *Greenberg*) claims that the label is misleading because most people consume enough biotin and do not need biotin supplements. As *Greenberg* explains, however, the Act preempts that claim, because under the Act a structure/function claim is solely about the nutrient's role in the body; it "does not purport to convey the product's health impact on the general population." The complaint here also faults biotin for not being able to prevent or cure hair, skin, and nail problems caused by a variety of diseases, but that treats Defendants' structure/function claim as a disease claim, which the Act does not allow.

From the allegations in the complaint, it is apparent that "Plaintiff disagrees with the federal statutory scheme for dietary supplements, but [the court] cannot accept his invitation to upend it." *Dachauer v. NBTY*, 913 F.3d 844, 848 (9th Cir. 2019). That quote is from a prior dietary supplement case argued by Plaintiff's counsel, but it applies equally here. The Act preempts Plaintiff's cause of action.

Perhaps owing to the Ninth Circuit's recent decision on preemption and counsel's focus on overcoming it, the plaintiff is an afterthought in her own complaint. Her name appears in just three of the complaint's 133 paragraphs, which never even allege that she actually took one of the supplements. Thus, even setting aside preemption, the complaint fails in any event to state a

claim because it lacks basic allegations about Plaintiff's use of the product—if there was any use at all. The complaint should be dismissed with prejudice.

## BACKGROUND

### A. Biotin and biotin supplements

This case is about biotin. The complaint alleges that "biotin is an essential vitamin that plays a key role in our metabolism without which we would die." Compl. ¶ 43. "Biotin the nutrient is a colorless, water soluble B vitamin found in many foods including fruits, vegetables, cereals, and meats and fish." *Id*. ¶ 37. Biotin is also available in dietary supplements, including those sold by Defendants, Nature's Bounty and NBTY, depicted below.[1] *Id*. ¶ 1.



---

[1] These are clearer pictures of the same product pictured in the complaint (¶ 110), except for the number of softgels in the bottle.

The label states, "Supports Healthy Hair, Skin & Nails*." The asterisk leads to this statement: "These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease."

### B. This lawsuit

The complaint alleges that Plaintiff, Tamara Dervin, bought Nature's Bounty biotin products for her hair. *Id*. ¶ 110. The complaint does not allege she had any interest in biotin's support of skin or nails. *Id*. It also does ***not*** allege that she ***ever*** ingested any of the biotin supplements. In fact, it alleges that she was "injured … at the time of purchase"—before she could have ingested any. *Id*. ¶ 111. Given that, the complaint naturally does ***not*** allege that the supplements failed to work for her.

This Court's recent order succinctly summarizes the central allegations of this case: Plaintiff "brings this action alleging Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*., by representing their Biotin supplement products (the 'Supplements') support healthy hair, skin, and nails. Dervin contends this representation is false because biotin the nutrient (the 'Nutrient') does not support healthy hair, skin, and nails, and, regardless, people consume enough of the Nutrient in their normal diet, so the Supplement is unnecessary." Dkt. 31 at 1; *see also* Compl. ¶¶ 2-5.

As the order also explains, the complaint's allegation that "the Nutrient does not support hair, skin, or nails" is "flatly inconsistent with allegations made by Dervin's present counsel in five previous cases. In those five cases, Dervin's counsel made the exact opposite allegations— that is, biotin does support hair, skin, or nails." Dkt. 31 at 3. The order did not resolve whether "the shift in this material allegation of the subject of the Complaint is a product of reasonable circumstances reflecting changes in evidence in the field or some other proper purpose, or purely

4

a method to evade the definitive holding of the Ninth Circuit Court of Appeals" last year in *Greenberg v. Target*, 985 F.3d 650, 655-56 (9th Cir. 2021), which "found counsel's state law claims were preempted by the Food, Drug and Cosmetic Act." Dkt. 31 at 2, 3. The complaint does not allege any post-*Greenberg* development in science or any other proper reason for the reversal of the allegation about the Nutrient.

C.     **Allegations about the science**

Indeed, the complaint does not identify a single study, experiment, or piece of scientific literature—whether before *Greenberg* or after—showing that the Nutrient does *not* support healthy hair, skin, and nails. Instead, it alleges that "clinical trials have not been conducted" that could support its assertion about biotin's lack of support. Compl. ¶ 94. The complaint asserts there is "no clinical evidence" on the subject. *Id*. But the complaint also admits that it is ***not*** accusing Defendants of "a lack of substantiation" for their label statement. *Id*. ¶ 95.[2]

The science that the complaint *does* discuss substantiates Defendants' label statement. ***First***, the complaint relies on a publication by the National Academy of Science's Institute of Medicine, in which the Institute set a level of "Adequate Intake" for biotin. *Id*. ¶¶ 19-20, 30.[3] The Institute explained the "Clinical Effects of Inadequate Intake" of biotin: "The clinical

---

[2] One reason the accusation is not made, presumably, is that in a recent biotin case against the same Defendants, Plaintiff's counsel submitted expert testimony asserting that "substantial scientific literature … demonstrates that biotin as a nutrient supports healthy hair, skin, nails, and energy." Dkt. 18 at 10. That is substantiation. Another reason is that asserting a lack of substantiation cannot state a claim under the Illinois consumer fraud statute. *E.g.*, *Beardsall v. CVS Pharmacy*, 953 F.3d 969, 977 (7th Cir. 2020) ("Private individuals … may not bring an action without supporting evidence and merely demand that the defendant prove the claim it makes for its products."); *Gredell v. Wyeth Labs.*, 367 Ill. App. 3d 287, 291 (1st Dist. 2006).

[3] Given that the complaint made numerous allegations about the Institute of Medicine (¶¶ 19-21, 29-34) and relied on this publication, the Court may consider it when ruling on this motion to dismiss. *Hecker v. Deere*, 556 F.3d 575, 582 (7th Cir. 2009); *Billups v. PHH Mortg.*, 2021 WL 1648114, at *2 (N.D. Ill.) (Kocoras, J.). For the Court's convenience, copies of the relevant pages are attached as Ex. A.

5

findings of biotin deficiency include dermatitis … [and] alopecia." Ex. A. at 4. Dermatitis is a skin irritation such as a rash or blistering. Alopecia is hair loss.

*Second*, the complaint admits that "when a person fails to obtain sufficient free biotin" in the body, "one of the initial symptoms … *may* be hair and skin problems." Compl. ¶¶ 54-55. A lack of biotin can be caused by not consuming enough of it, a point the complaint makes by describing people who "developed symptoms of … biotin deficiency" because they were being fed intravenously, and the feeding included no biotin. *Id*. ¶ 60. "This was readily corrected by supplementing the intravenous feedings with biotin." *Id*. The complaint also give the example of formula-fed infants who "began exhibiting symptoms of … biotin deficiency." *Id*. ¶ 61. "[T]his too was readily corrected by including biotin in the formula." *Id*.

Another cause of biotin deficiency is a genetic mutation that affects the body's ability to obtain biotin from food or reuse it, which can lead to "hair loss and rashes." *Id*. ¶ 65. These symptoms can be ameliorated or prevented "if treated early with pharmacological doses of biotin at the mega-dose quantities sold to the general population by Defendants." *Id*. ¶ 66. "[T]reatment … with mega-dose biotin resolves its various symptoms, including hair and skin problems." *Id*. ¶ 92.

Yet another cause of a lack of biotin is consuming too much avidin, a protein that binds to biotin and makes it unavailable for use by the body. *Id*. ¶ 56. This causes symptoms including "hair thinning and skin problems." *Id*. ¶ 58.

*Third*, on the topic of biotin's effect on nails, the complaint admits that in animal observations, "animals whose feed had insufficient amounts of biotin" had "brittle hooves [that] were remedied simply by putting supplemental biotin in their feed." *Id*. ¶ 55.

6

***Fourth***, case studies show that people with the conditions of "uncombable hair" syndrome (a genetic condition) or brittle nails were successfully treated with supplemental biotin. *Id*. ¶ 98.

In short, by the complaint's account, science has established that having too little biotin in the body or being unable to use biotin in the body causes problems with hair, skin, and nails. Put the other way around, the Nutrient supports healthy hair, skin, and nails. The complaint attacks this science rather than embracing it as it was embraced in Plaintiff's counsel's prior biotin cases. But, again, the complaint does *not* assert that Defendants lack substantiation for their label statement. Nor does it assert that any study, experiment, or scientific literature show that the Nutrient does *not* support healthy hair, skin, and nails.

## ARGUMENT

### I. The Act explicitly preempts Plaintiffs claim.

The complaint alleges that "even if it were true—that biotin the nutrient … does directly support hair, skin and nails," people consume enough of the Nutrient in their normal diet, so the Supplement is unnecessary and for that reason its label is misleading. *Id*. ¶¶ 5, 91. That claim is a direct repeat of the claim in *Greenberg*, in which the Ninth Circuit held the Act expressly preempts it.

#### A. *Greenberg* explains the test for evaluating Plaintiff's claim.

The plaintiff in *Greenberg*, like Plaintiff in the present case, challenged a label statement about biotin—"helps support healthy hair and skin." *Greenberg*, 985 F.3d at 653. Just as in the present case, that statement was accompanied by an asterisk that led to the statement, "This product is not intended to diagnose, treat, cure, or prevent any disease." *Id*. The plaintiff sued on

the theory "that the product labels are deceptive because most people do not benefit from biotin supplementation." *Id*.

The Ninth Circuit began by explaining that the Act "authorizes several categories of statements that can be made on the product if certain requirements are met." *Id*. at 654. One is a disease claim, which "refers to a statement that the product itself can cure or treat a disease." *Id*. Another—the kind of claim at issue here—is a "structure/function claim." *Id*.

A structure/function claim "is a much more narrowly focused statement 'that describe[s] the role of a *nutrient or dietary ingredient* intended to affect the structure or function in humans or that characterizes the documented mechanism by which *a nutrient or dietary ingredient* acts to maintain such structure or function.'" *Id*. (quoting 21 C.F.R. § 101.93(f) and citing 21 U.S.C. § 343(r)(6)(A)). "In other words, a structure/function claim merely describes the function or role of an ingredient or nutrient on the human body." *Id*. Such claims commonly use terms such as "strengthen," "improve," and "protect." *Id*.

Of particular note, "a structure/function claim … refers to the *ingredient's* general role in the human body, not the *product's* impact on a person's health." *Id*. at 655 (emphases added). "Simply put, manufacturers may make structure/function claims about a nutrient's general role on the human body without disclosing whether the product will provide a health benefit to each consumer." *Id*. at 656.

To make a structure/function claim about a dietary supplement, the Act requires the maker to meet three requirements: the claim (1) must be substantiated, (2) must include a disclaimer (stating that the FDA has not evaluated the claim, and the product is not intended to cure or treat a disease), and (3) must not be a disease claim. *Id*. at 654. In *Greenberg*, all three of the Act's requirements were met. *Id*. at 657.

8

The plaintiff in *Greenberg*, however, "essentially seeks to impose an additional requirement that dietary supplement labels can make structure/function claims only if consumers are likely to benefit from the product." *Id*. "But that requirement 'is not identical to the requirement of section 343(r).' 21 U.S.C. § 343-1(a)(5). It is thus preempted." *Id*.; *see also Turek v. Gen. Mills*, 662 F.3d 423, 426 (7th Cir. 2011) (explaining and applying the Act's "not identical to" standard).

### B. Plaintiff's claim flunks *Greenberg*'s test.

The Ninth's Circuit's analysis leads directly to the same conclusion in the present case. As an initial matter, as the Ninth Circuit held, the claim "Supports Healthy Hair, Skin & Nails" is a structure/function claim. It addresses the general role (support) of an ingredient or nutrient (biotin) on the human body (hair, skin, and nails). It is indistinguishable in form from the claim "'helps support cartilage and joint function,'" which the FDA has stated is "a permissible structure/function claim, because it relates to maintaining normal function." *Kroessler v. CVS Health*, 977 F.3d 803, 809 (9th Cir. 2020) (quoting Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000 (2000)).

The structure/function claim in the present case also meets the Act's requirements. First, the claim is substantiated. The complaint concedes that it is not asserting "a lack of substantiation" (Compl. ¶ 95), which shows that substantiation is not at issue here. In addition, as explained above, the complaint relies on a scientific publication that reports on clinical findings of skin and hair problems caused by a lack of biotin. The complaint also provides numerous examples from science showing that a lack of available biotin causes hair, skin, and nail problems, which is far more than enough to show "evidence of an effect on a small aspect of the

9

related structure/function." *Greenberg*, 985 F.3d at 655; *see also Trujillo v. Walgreen*, 2013 WL 4047717, at *3 (N.D. Ill.) (holding preempted a consumer fraud claim about a dietary supplement because of substantiating information found in the complaint).

The plaintiff in *Greenberg*, like Plaintiff here, argued that the structure/function claim was deceptive because "a mega-dosage of biotin benefits only a tiny percentage of the public," so the claim that it "helps support hair and skin is misleading for most people. [The plaintiff] implies that the structure/function claim must be true not only as to the nutrient itself but the product as a whole." *Greenberg*, 985 F.3d at 655. The Ninth Circuit correctly rejected that argument: "the plain language of the [Act] and its implementing regulations clarifies that a structure/function claim addresses only the general role of an *ingredient/nutrient* on the human body. It does not purport to convey the *product's* health impact on the general population." *Id*. at 656 (emphases added). "[T]he statute only requires substantiation for the *ingredient's* function on the human body, not the health impact of the *product* as a whole." *Id*. (emphases added). Here, the complaint's repeated assertions that the *Supplements* do not support healthy hair, skin, and nails (*e.g.*, Compl. ¶¶ 2, 11, 14, 16, 95, 110, 126) likewise cannot save Plaintiff's claim.

The structure/function claim here also includes the disclaimer that the Act requires, which is identical to the disclaimer used in *Greenberg*. It can be seen in the photograph above and there is, of course, no allegation in the complaint that the disclaimer was not used.

Finally, the structure/function claim does not claim to treat a disease. It does not even mention a disease. And, as in *Greenberg*, the disclaimer itself states, "This product is not intended to diagnose, treat, cure, or prevent any disease." *Greenberg*, 985 F.3d at 657.

Given that the structure/function claim here meets all of the Act's requirements, federal law authorizes Defendants to make it. That has two consequences. First, as the Act states, and

10

*Greenberg* held, Plaintiff may not use a state-law cause of action to attack the structure/function claim. The Act preempts her claim. Second, her claim is not actionable under the Illinois consumer fraud law because it is an action "specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of … the United States." 815 ILCS 505/10b(1); *see also Turek*, 662 F.3d at 427. Thus, in addition to being preempted, Plaintiff's claim is barred by the statute on which her entire complaint depends.

### C. Plaintiff cannot evade *Greenberg* by asserting that the Nutrient does not support healthy hair, skin, and nails.

Plaintiff's counsel, having been counsel to the plaintiff in *Greenberg*, knows that the cause of action in the present case is preempted unless *Greenberg* can somehow be avoided. *Greenberg* states that "if a structure/function claim is factually false or lacks substantiation, then state law claims will not be preempted." *Id*. at 657. In *Greenberg*, counsel "agree[d] that biotin is a nutrient that supports healthy hair and skin." *Id*. at 653. The complaint in the present case, by contrast, makes the "flatly inconsistent" allegation that the Nutrient does *not* support those things. Dkt. 31 at 3. Plaintiff's counsel admits he made this allegation specifically to "tak[e] this case out of the grasp of the … [*Greenberg v.*] *Target* ruling altogether." Dkt. 18-2 at 31.

The complaint's new and backwards assertion fails as an attempt to escape from *Greenberg*'s preemption holding. When *Greenberg* acknowledged that state-law claims are not preempted if a structure/function claim is factually false or lacks substantiation, it quoted *Kroessler v. CVS Health*, 977 F.3d 803, 812 (9th Cir. 2020): the plaintiff "alleges that CVS's [dietary supplement] claims are false because scientific studies directly refute them." *Greenberg*, 985 F.3d at 657. *Kroessler* continued, "The supplement labels claim … to support and maintain joint health, but the scientific studies allegedly conclude that [the supplement] is useless for such ends." *Kroessler*, 977 F.3d at 812.

In the present case, however, that is not the situation. The complaint *admits* that there are *no* studies finding the Nutrient does not support healthy hair, skin, and nails. Plaintiff cannot use a bare assertion, unaccompanied by studies, to fit within *Greenberg*'s exception. What's more, Plaintiffs' failure—indeed, inability—to identify studies that contradict the structure/function claim also disqualifies her cause of action under Rule 9(b). *Pearson v. Target*, 2012 WL 7761986, at *2 (N.D. Ill.) (finding Rule 9(b) satisfied, for a consumer fraud claim about a dietary supplement, only because the complaint "point[s] to specific clinical studies … and alleg[es] with particularity how the results of those studies refute specific representations on the [supplement's] packaging").

Unable to identify studies showing Defendants' specific structure/function claim to be false, the complaint resorts to making arguments that do not help it state a claim. One is that "hair problems" can be caused by diseases, such as diabetes or lupus, which are not "related to or caused by a deficiency in biotin" and therefore cannot be treated with biotin. Compl. ¶¶ 87-88; *see also id.* ¶¶ 72-86, 89. But the fact that diseases unrelated to biotin can also have an effect on hair does not suggest that biotin fails to support healthy hair. Plaintiff may as well object that biotin does not support healthy hair because scissors can cut hair. The two things have nothing to do with each other.

In addition, by implicitly demanding that biotin be capable of curing those diseases or preventing abnormal hair thinning or skin problems, Plaintiff is improperly treating the product label as if it made a disease claim. 21 C.F.R. § 101.93(g) (claims to prevent an abnormal condition are disease claims). But as explained above, Defendants did not make a disease claim. In fact, the label states, "This product is not intended to diagnose, treat, cure or prevent any disease."

Plaintiffs' argument cannot in any event help avoid preemption, because the Act also preempts assertions that a structure/function claim is false on the theory that a nutrient fails to prevent a disease. "[B]y definition, structure/function claims *do not* … claim to treat or prevent disease," and a plaintiff may not prevail by making an argument that "would vitiate the [Act's] distinction between disease claims and structure/function claims." *Dachauer v. NBTY*, 913 F.3d 844, 848 (9th Cir. 2019). When making a structure/function claim, which is the only claim Defendants made, "supplement manufacturers need only show evidence of an effect on a small aspect of the related structure/function; *they need not provide evidence of an effect on the disease linked to that structure/function.*" *Greenberg*, 985 F.3d at 655 (emphasis added). Yet that is exactly what Plaintiff argues for here.

The complaint also argues that the Nutrient does not have a "direct link" or "direct connection" to "hair, skin, or nail health." Compl. ¶¶ 71, 82, 90. By this the complaint means that although the Nutrient has a "singular … function in connection with our metabolism" and a "key role in our metabolism," *id*. ¶¶ 15, 43; *see also id*. ¶ 83, and although a lack of the Nutrient inside the body interferes with metabolism, "it is the disruption of the metabolism that causes this cascade of symptoms (including hair and skin problems) and not a deficiency of biotin." *Id*. ¶¶ 54, 68, 70, 75-76, 85. "Therefore, although treatment … with mega-dose biotin resolves its various symptoms, including hair and skin problems, it is not due to the supplemental biotin supporting hair and skin, but rather, is due to the disrupted metabolic pathways being restored to normal." *Id*. ¶ 92.

In other words, the complaint contends that the Nutrient does not *directly* support hair, skin, and nails on the ground that it only *indirectly* supports hair, skin, and nails due to its role in metabolism. Even if that contention is true, it cannot help Plaintiff state a claim. First, the label

13

did not specify "direct" support, so Plaintiff cannot show the label is misleading by arguing that the support is indirect. *Dachauer v. NBTY*, 2017 WL 2304209, at *2 (N.D. Cal.) (finding that the statement "supports" heart health is not misleading because the dietary supplement benefits lipid oxidation and inflammatory response), *aff'd*, 913 F.3d 844.

Second, the Act does *not* require the label to explain the "mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function." 21 U.S.C. § 343(r)(6)(A); 21 C.F.R. § 101.93(f). For that reason, the Act will not allow a state-law claim asserting that Defendants were required to say on the label that the mechanism here is the body's metabolism. The Act allows Defendants to make a structure/function claim that "describe[s] the role of a nutrient or dietary ingredient intended to affect the structure or function in humans," *id*., and that is precisely what they did here with the statement "Supports Healthy Hair, Skin & Nails." *Greenberg*, 985 F.3d at 653. Plaintiff's claim is therefore preempted.

II. **Plaintiff's claim fails because she does not allege that she ever took biotin, much less allege in what way it failed to work for her.**

This entire case is based on the assertion that Defendants used deception to sell Plaintiff a dietary supplement by stating on its label, "Supports Healthy Hair, Skin & Nails," in violation of the Illinois consumer fraud statute. Claims of deception under that statute must be pleaded with particularity under Rule 9(b), *e.g.*, *Pirelli Armstrong Tire Retiree Med. Benefits Trust v. Walgreen*, 631 F.3d 436, 441 (7th Cir. 2011), but Plaintiff is barely mentioned in the complaint.

After the complaint's introductory sentence, Plaintiff's name is used only in paragraphs 110-12. There the reader learns that she bought the Supplements for her hair in late 2020 or early 2021 at a Mariano's or Target in Chicago, which is where she lives. That's it.

Among other basic facts, the complaint does *not* allege that Plaintiff *ever* ingested the supplement. (As explained above, it alleges she was injured *before* she could have taken it.) It

14

does not allege how often and for what length of time—if any—she took the supplement. It does not allege what about her hair led her to buy the supplement. And it does *not* allege in what way the supplement failed to work for her—if it did fail to work. In other words, she has pleaded without particularity.

Even setting aside Rule 9(b), Plaintiff's claim requires her to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). Here, that includes facts plausibly showing that a deception proximately caused her actual damage. *Oliveira v. Amoco Oil*, 776 N.E.2d 151, 160 (Ill. 2002) (elements of the claim). But she has alleged nothing of the sort.

For all the reader can tell, Plaintiff purchased a dietary supplement that *did* work for her or that *never* became part of her diet. As many decisions recognize, these gaping holes in her case should result in its dismissal. *E.g.*, *Castillo v. Unilever U.S.*, 2022 WL 704809, at *5 (N.D. Ill.) (dismissing Illinois consumer fraud claim because the plaintiffs "failed to allege the products they purchased failed to work as advertised *for them*"); *Spector v. Mondelez Int'l*, 178 F. Supp. 3d 657, 673 (N.D. Ill. 2016) (dismissing Illinois consumer fraud claim because the plaintiff did not allege that she personally did not experience the benefit stated on the product label); *Padilla v. Costco Wholesale*, 2012 WL 2397012, at *3 (N.D. Ill.) (dismissing because plaintiff "fails to include any allegations that the [dietary supplement] did not work for him."); *Hughes v. Chattem*, 818 F. Supp. 2d 1112, 1118 (S.D. Ind. 2011) (dismissing consumer fraud claim because the complaint failed to allege "even that [a dietary supplement] did not facilitate [plaintiffs'] weight loss efforts").

## **CONCLUSION**

This Court should dismiss the entire case with prejudice.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: March 30, 2022 | By: */s/ Amanda L. Groves* <br> Amanda L. Groves <br> Scott P. Glauberman <br> Ross J. Corbett <br> Nicholas P. Matosian <br> Winston & Strawn LLP <br> 35 W. Wacker Dr. <br> Chicago, Illinois 60601 <br> Telephone: (312) 558-7883 <br> Fax: (312) 558-5700 <br> AGroves@winston.com <br> SGlauberman@winston.com <br> RCorbett@winston.com <br> NMatosian@winston.com <br> <br> *Counsel for Defendants* |

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on March 30, 2022, she caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Northern District of Illinois of the United States District Court using the CM/ECF served on the following individuals:

Stewart M. Weltman
Weltman Law LLC
235 W. Snow Rd.
Baroda, MI 49101

Pasha Vaziri
Vaziri Law LLC
111 W. Washington St., Ste. 1500
Chicago, IL 60602

Charles E. Shaffer
Levin Sedran & Berman LLP
510 Walnut St., Ste. 500
Philadelphia, PA 19106

Charles LaDuca
Cuneo Gilbery & LaDuca, LLP
4725 Wisconsin Ave., NW, Ste. 200
Washington, DC 2016

Michael McShane
Audet & Partners LLP
711 Van Ness Ave., Ste. 500
San Francisco, CA 94102

By: */s/Amanda L. Groves*
Amanda L. Groves