# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TAMARA M. DERVIN, on behalf of Herself and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Hon. Charles P. Kocoras |
| v. | ) ) | 21 CV 4215 |
| NBTY, INC., a Delaware Corporation, and NATURE'S BOUNTY, INC., a Delaware Corporation, | ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFEDANDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Now comes the Plaintiff, Tamara Dervin, on behalf of herself and all others similarly situated, through counsel, and for her Response to Defendants' Motion to Dismiss Plaintiff's Complaint, states as follows:

### INTRODUCTION

Defendants contend that as long as they accurately state the benefits purportedly provided by biotin the nutrient on the labels of their supplemental biotin products, they have complied with federal law and Plaintiffs' consumer fraud claims are preempted. (See Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss ("Memo"), pp. 7-14). According to Defendants, this is so even if the Complaint plausibly alleges that the science is clear that Defendants' supplemental biotin provides no benefits because it is superfluous and unnecessary for the general population of consumers (but for the rare ones who actually benefit

1

from mega-dose biotin to treat certain rare diseases/conditions and, even then, those persons do not directly derive hair, skin, and nail benefits).[1]

Relying upon *Greenberg v. Target*, 985 F.3d 650, an outlier decision from the Ninth Circuit that turns FDA law on its head, Defendants argue that as long as their labels truthfully state what biotin the nutrient does, it makes no difference if the science shows that their biotin products do not and cannot work as represented or that consumers are being misled into buying a worthless product.[2] As the *Greenberg* court boldly but absurdly admitted about the effect of its holding, "Simply put, manufacturers may make structure/function claims about a nutrient's general role on the human body without disclosing whether the product will provide a health benefit." *Id.* At 656. As explained below, the Complaint here more than plausibly alleges scientifically detailed facts demonstrating that biotin the nutrient does not support hair, skin, and nail health any more than does oxygen or water such that even under this strict construction of the meaning imparted to consumers on the labeling Plaintiff's claims are not preempted under DSHEA. But Plaintiff respectfully submits that, regardless of whether or not biotin the nutrient supports hair, skin, and nail health, the Court should reject *Greenberg* and hold that these allegations, standing alone, are not preempted.

I.  **SUMMARY OF PLAINTIFF'S COMPLAINT.**

---

[1] Three courts have sustained these allegations. See *Alvarez v. NBTY, Inc.*, No. 17-cv-00567-BAS-BGS, 2017 U.S. Dist. LEXIS 201159, at *28 (S.D. Cal. Dec. 6, 2017), *Jensen v. Natrol*, No. 17-cv-03193-VC, 2017 U.S. Dist. LEXIS 235580, at *2 (N.D. Cal. Sep. 22, 2017), and *Greenberg v. Target Corp.*, No. 17-cv-01862-RS, 2017 U.S. Dist. LEXIS 222394, at *13 (N.D. Cal. Aug. 28, 2017).

[2] It should be noted that the *Greenberg* court did not find preemption of the nail health fraud claim because Target did not make this representation in the first instance. *Greenberg* at 653. Since *Greenberg* was decided, another Ninth Circuit panel rejected similar arguments based upon it. In *Seegert v. Relax Sundown, Inc.*, the defendant-appellee argued that *Greenberg* required affirmance of the District Court's preemption finding. (See defendant-appellee's Answering Brief, attached hereto as Exhibit A, p. 2). But this different panel rejected such arguments and reversed and remanded. No. 20-55486, 2022 U.S. App. LEXIS 2864, at *7 (9th Cir. Feb. 1, 2022). Moreover, no other panel of any Circuit court, including the Ninth Circuit, has cited this decision with approbation.

Defendants' products, (1) Biotin 5000 mcg; (2) SUPER POTENCY Biotin 5000 mcg; (3) QUICK DISSOLVE Biotin 5000 mcg; (4) Biotin 10,000 mcg rapid release liquid soft gels; and (5) Biotin 10,000 mcg Health & Beauty rapid release liquid softgels (collectively, the Products") contain one ingredient, supplemental biotin, and are marketed with the same false, misleading, and deceptive statements on the front of their labels—that they help support hair, skin, and nail health. (See Complaint ¶ ¶ 1, 7-8). But based upon well-settled science, supplemental biotin is unneeded, superfluous, and worthless to the general population of consumers because their needs for biotin are finite, and we already get way more biotin we need from food and recycling. *Id.* ¶ ¶ 15, 18, 21, 30-32, 34-36, 38-45, 53, 67, 91, 93-94, 101, 103-105.

Thus, even if Defendants' assertions that biotin the nutrient has some effect on hair, skin, and nail health were true, which they are not as set forth at paragraphs 46-90 of the Complaint, a dispositive issue in this case is that supplemental biotin is worthless and *any* amount of supplemental biotin is superfluous and cannot and will not provide any type of health benefit to the general population, because the body's biotin needs are finite, and more than enough biotin is obtained readily from food and recycling of spent biotin within the body. *Id.* ¶ 91.

## II.  PLAINTIFF'S CONSUMER FRAUD CLAIMS ARE NOT PREEMPTED AS A MATTER OF LAW AND FACT.

### A.  THE FEDERAL FOOD, DRUG, AND COSMETICS ACT ("FDCA") AND THE DIETARY SUPPLEMENT HEALTH AND EDUCATION ACT OF 1994 ("DSHEA") EVISCERATE THE *GREENBERG* HOLDING AND DEFENDANTS' PREEMPTION ARGUMENTS.

Plaintiff respectfully submits that *Greenberg* was wrongly decided and would not be followed by the Seventh Circuit or other circuits because it stands FDA law on its head. Based upon a misreading of DSHEA, and erroneously rejecting what the FDA said on the subject in a 2009 published guidance, the *Greenberg* panel held that a dietary supplement manufacturer

complies with the DSHEA's substantiation standards when it makes a truthful statement about a nutrient that its supplemental form purports to replicate, even if the science demonstrates that the supplemental form of the nutrient does not provide these or any other health benefits. *Greenberg* at 655-56. And in one fell swoop, this opinion eliminated 60 years of consumer protection that had existed since the 1962 amendments to the FDCA and the enactment of DSHEA in 1994each of which stand for the common-sense proposition that if a product does not work as represented, it is deemed misbranded, false, misleading, or deceptive. This principle is true for all other consumer products and DSHEA did not create an exception for dietary supplements.

1. **THE LAW—HALF TRUTHS ARE ACTIONABLE.**

Since the early 1970s, the FDA and the courts have taken the position that even if a supplement's labeling might be literally true in some fashion, it is still misleading and violates the FDCA if the supplement itself does not work as represented.

In this regard, the Supreme Court has made clear as early as 1924 that the FDCA:

> [I]s plain and direct. Its comprehensive terms condemn every statement, design, and device which may mislead or deceive. Deception may result from the use of statements not technically false or which may be literally true. The aim of the statute is to prevent that resulting from indirection and ambiguity, as well as from statements which are false. It is not difficult to choose statements, designs, and devices which will not deceive. Those which are ambiguous and liable to mislead should be read favorably to the accomplishment of the purpose of the act. The statute applies to food, and the ingredients and substances contained therein.

*U.S. v. Ninety-Five Barrels,* 265 U.S. 438, 442-43 (1924).

This is still the law today and was incorporated into DSHEA as 21 U.S.C.A. §343(a), under the heading "False or misleading label," states that a label, including a dietary supplement label, is misbranded "If (1) its labeling is false or *misleading in any particular …*" (emphasis added). Additionally, yet another recent Ninth Circuit decision, rendered by a panel other than *Greenberg*, has provided additional gloss on this statutory language:

> The FDCA requires manufacturers of dietary supplements to ensure that the labels on their products are not "false or misleading in any particular." 21 U.S.C. § 343(a). The Food and Drug Administration ("FDA")—the primary enforcer of the FDCA—specifies that a supplement's label is misleading if, among other things, it fails to reveal facts that are: (1) *Material in light of other representations made or suggested by statement, word, design, device or any combination thereof*; or (2) Material with respect to *consequences which may result from use of the article under: (i) The conditions prescribed in such labeling* or (ii) such conditions of use as are customary or usual. 21 C.F.R. § 1.21(a).

*Kroessler v. CVS Health Corp.*, 977 F.3d 803, 809 (9th Cir. 2020) (emphasis added).[3]

As applied here, that means even if biotin the nutrient found in foods does support hair, skin, and nail health, that same statement on the front of a biotin supplement label, at a minimum, suggests that the product containing this supplemental form of biotin will do the same. Yet, without some qualifying language indicating that statement only applies to biotin the nutrient, the statement on the label is misleading and deceptive.

### 2. THE *GREENBERG* DECISION, AND THUS, THE DEFENDANTS' PREEMPTION ARGUMENT CONFLICT WITH THE FDA'S POSITION AS SET FORTH IN ITS GUIDANCE PUBLISHED PURSUANT TO ITS AUHTORITY UNDER DSHEA.

Subsequent to the enactment of DSHEA, the FDA (as to labeling) and the FTC (as to advertising) both published lengthy guidance documents, directed to supplement manufacturers, setting forth the types and levels of scientific evidence they need to substantiate their labeling and advertising claims to ensure that they are not false or misleading.[4] As a threshold matter, detailed guidance documents like those published by the FDA and FTC would not have been necessary if, as the *Greenberg* court and Defendants contend, all dietary supplement manufacturers need for the substantiation of their labeling claims on their supplements is that the

---
[3] The *Kroessler* court also noted that the stated purpose of the FDCA is "promoting public policy by retaining parallel avenues for private and public enforcement actions against false or misleading statements."
[4] The FDA also adopted the FTC's substantiation standards such that the latter also apply to labeling. (See FDA Guidance, attached hereto as Exhibit B, pp. 2-3).

nutrient/ingredient they are selling in supplemental form provides such benefits when consumer derived from food. At least one would think that the FDA and FTC guidance would have said at some point that if the nutrient form of X provides Y benefit, that meets the substantiation requirements of DSHEA for a supplemental replication of X. Yet, nowhere in either's guidance does it say this is an option for supplement manufacturers. In fact, the guidance expressly rebuts such a contention.[5]

To the contrary, each guidance focuses on the substantiation required for the products that are being sold with benefit claims (i.e. dietary supplements) and whether there is adequate scientific substantiation that the products themselves work as represented. And in this context, each guidance discusses in great detail the types of scientific evidence required to substantiate that the product itself (as opposed to the nutrient it purports to replicate) provides the represented benefits with high-quality, randomized, controlled clinical trials being the default position. Yet, as alleged in the complaint no such studies exist at all for the supplemental forms of biotin and there is also no clinical support that biotin the nutrient supports hair, skin, and nail health. (See Complaint, ¶ ¶ 93-96). Ergo, even though this is not a case based upon an alleged lack of substantiation but rather affirmatively sets forth why the label representations are false or misleading, Defendants have none of the required substantiation for either the supplemental or nutrient forms of biotin and are in violation of DSHEA. Accordingly, the Complaint's allegations are consistent with DSHEA, not contrary to it.

Thus, for example, at the very beginning of its substantiation guidance, the FDA states:

> *To ensure compliance with the Act*, we recommend that dietary supplement manufacturers carefully draft their labeling claims and carefully review the support for *each claim* to make sure *that the support relates to the specific product* and

---

[5] Moreover, it must be noted that the *Greenberg* court did not hold that biotin the nutrient supports hair and skin health. Rather, all it held was that the plaintiff in that case admitted that it did. *Greenberg* at 653.

> claim, is scientifically sound, and is adequate in the context of the surrounding body of evidence.
>
> The FTC has typically applied a substantiation standard of "competent and reliable scientific evidence" to claims about the benefits and safety of dietary supplements and other health-related products. FDA intends to apply a standard for the substantiation of dietary supplement claims that is consistent with the FTC approach. This guidance document, using examples of claims that might be made for a dietary supplement, describes criteria to be considered in evaluating the nature of the claim and the amount, type, and quality of evidence in support of the claim.

(See Exhibit B, p. 3) (emphasis added).

With its emphasis on the products being sold—dietary supplements—the FDA embarks on an extensive discussion of the required substantiation that dietary supplement manufacturers must have to make lawful labeling statements under DSHEA, and it provides numerous examples, several of which directly controvert the *Greenberg* holding.

First, the FDA makes clear that attention must be paid, not only to the express statements on a label, but also the implied statements—and substantiation must exist for each:

> We recommend that firms not only focus on individual statements or phrases, but also on what expected effect or benefit are being promoted when all of the statements being made for the product are considered together. Although it is important that individual statements be substantiated, it is equally important to substantiate the overall "message" contained when the claims are considered together.

*Id.*, p. 4.

In fact, the very first example the FDA uses to explain what sorts of substantiation are required of supplement manufacturers concerns a supplement containing a nutrient that does provide the represented benefit:

> ***Example 1***: The label of a dietary supplement containing "X" uses the following claims: "The amino acid 'X' is the chemical precursor to nitric oxide. Blood vessel cells contain enzymes that produce nitric oxide. Nitric oxide is important in maintaining blood vessel tone." Assuming this statement were supported by sound science so that each individual statement was substantiated, the "message" conveyed by the claims, when considered together, is that taking oral "X" will

7

> affect nitric oxide production and blood vessel tone. Therefore, we recommend in this case that the dietary supplement manufacturer have substantiation that taking the amount of "X" provided by the product affect nitric oxide production and blood vessel tone under the product's recommended conditions of use.

*Id.*

Thus, even though the FDA accepts the premise that natural forms of amino acid X work in the manner represented on the labeling, the FDA requires that the supplement manufacturer have substantiation that taking the amount of supplemental amino acid X will do the same. This example alone completely eviscerates the *Greenberg* holding.

Most notably, the FDA expressly addresses the situation where studies show that a nutrient found in nature "have indicated a benefit for the particular nutrient" but the science shows that the nutrient in supplement form does not do the same. In those cases, the FDA concludes that evidence from the nutrient found in nature does not constitute substantiation for the supplemental form under the DSHEA:

> Furthermore, although epidemiological studies based on the recorded dietary intake of conventional foods have indicated a benefit for a particular nutrient, *it has been subsequently demonstrated in an intervention study that the single ingredient nutrient containing dietary supplement did not confer a benefit* or actually was harmful…. As noted in endnote 3, *even if the effect of the specific component of the food constituting the dietary supplement could be determined with certainty, recent scientific studies have shown that nutrients in food do not necessarily have the same beneficial effect when taken in the form of a dietary supplement*. Such studies established either that there was no benefit when the nutrients are taken as a supplement and some studies even showed an increased risk for the very disease the nutrients were predicted to prevent. *We would expect similar issues with structure/functions claims made under § 403(r)(6)*. Thus, an observational study based on food does not provide competent and reliable scientific evidence for a dietary supplement and, and therefore, cannot substantiate a claim made under § 403(r)(6).

*Id.*, p. 19, n. 8 (emphasis added).

Here, Plaintiff relies upon well-settled science derived from our knowledge of our body chemistry to show that supplemental biotin is wholly superfluous because our needs are finite,

8

and we already obtain more than we need from our diet. The court in *Racies v. Quincy Bioscience, LLC* addressed whether clinical studies are required or whether body chemistry allegations are sufficient on their own and held:

> The Court finds that Plaintiff's body chemistry allegations, taken as true for purposes of this motion to dismiss, are sufficient to state a claim. If Plaintiff successfully proves that the apoaequorin in the Product is destroyed by the human digestive system or is of such a trivial amount that it cannot biologically affect memory or support brain function, he will be able to affirmatively prove the falsity of Defendant's Product claims.

No. 15-cv-00292-HSG, 2015 U.S. Dist. LEXIS 65468, at *11 (N.D. Cal. May 19, 2015).

Moreover, the FDA expressly noted that studies have recognized that "nutrients found in food do not necessarily have the same beneficial effect when taken in the form of a dietary supplement." *Id.* Therefore, even if biotin the nutrient did support hair, skin, and nails, per the FDA, there must be competent and reliable scientific evidence that the supplemental form does the same.

And throughout the FDA guidance, the focus is not on what the science shows about the effect of the nutrient found in food, but rather, what the science shows about the products themselves. Thus, for example, the FDA notes:

> Whether studies or evidence have a relationship to the specific claim being made or to the dietary supplement product itself is an important consideration in determining if a claim is substantiated. The following are some threshold questions in determining this relationship:
>
> *Have the studies specified and measured the dietary supplement that is the subject of the claim?* We recommend that the studies being used as substantiation for dietary supplement claims identify a specific dietary supplement or ingredient and serving size and that the conditions of use in the studies are similar to the labeling conditions of the *dietary supplement product*. Factors that would tend to indicate a stronger relationship between a substance that is the subject of a study and the substance that is the subject of *the dietary supplement* claim includes similarities in *formulation, serving size, route of administration, total length of exposure, and frequency of exposure…*

*Id.*, p. 5.

## III. THE *GREENBERG* DECISION WAS WRONGLY DECIDED.

The *Greenberg* court's analysis is based on the premise that the statutory language of the DSHEA is the final say on what constitutes substantiation. In its view, the express words of that statute merely require that the labeling statement is true as to the nutrient form of what the supplement purports to replicate for it to be substantiated. *Greenberg* at 654-57.

Yet, in its guidance, the FDA makes clear that the statute does not define what constitutes adequate substantiation: "The Act, as amended by the Dietary Supplement Health and Education Act of 1994 (DSHEA) and the legislative history accompanying DSHEA *do not define "substantiation."* (See Exhibit B, p. 2) (emphasis added). Thus, the major premise of the *Greenberg* opinion—that the language of the statute controls compliance with the DSHEA's substantiation requirements—is wrong per the FDA.

Furthermore, to make matters worse, in results orientated illogic, the *Greenberg* court erroneously gave short shrift to the FDA's pronouncements as set forth above and, in a footnote, it glibly stated:

> The plaintiff cites FDA and Federal Trade Commission guidance to bolster his argument, but they are not on-point and in any event are not binding on this Court. See, e.g. Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403(r )(6) of the Federal Food, Drug, and Cosmetic Act, 74 Reg. 204-01, 304 (Jan. 5, 2009) (stating that it "does not create or confer any rights for or on any person and does not operate to bind the FDA or the public."

*Greenberg* at 565, n. 3.[6]

---

[6]This standard preamble, indicating that the guidance does not confer any rights on any person and does not operate to bind the FDA or the public is, at best, boilerplate that allows FDA to change its mind in the future. See e.g. *Hood v. Wholesoy & Co.*, No. 12-cv-5550-YGR, 2013 U.S. Dist. LEXIS 97836 (N.D. Cal. July 12, 2013). But it has not changed its mind since this guidance was published in 2009, and neither the plaintiff in *Greenberg* nor Plaintiff here seek to assert any rights under this guidance. Rather, the guidance sets forth how and why Plaintiff's assertions of rights conferred under applicable consumer fraud laws are entirely consistent with the FDA's position on what constitutes false or misleading conduct and thus are not preempted. Simply stated, if a supplement product does not work as represented, such a consumer claim is entirely consistent with DSHEA.

Moreover, regardless what the *Greenberg* court said based on the preamble, the Seventh Circuit has held that an agency's informal pronouncements or guidance documents interpreting statutory language related to topics that Congress has delegated it to regulate are to be accorded deference and followed if they are well-wrought and thorough. See, *Wells Fargo Bank, National Ass'n v. Lake of the Torches Economic Development Corp.*, 658 F.3d 684, 696 (7th Cir. 2011) and *Vulcan Construction Materials, L.P. v. Federal Mine Safety & Health Review Comm'n*, 700 F.3d 297, 312 (7th Cir. 2012). The guidance above not only meets that standard but they have been followed by the FDA, the FTC, and the industry since they were issued.

In fact, the *Greenberg* decision is an outlier in the Ninth Circuit as that circuit has a long history of giving the FDA deference even to informal and non-final interpretations of the FDCA and the DSHEA:

> The FDA's interpretation of its regulations may be entitled to judicial deference: "[t]he FDA's views are 'controlling unless plainly erroneous or inconsistent with the regulation[s]' or there is any other reason to doubt that they reflect the FDA's fair and considered judgment." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 613 (2011) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997) ). Such deference should be afforded even where the FDA guidance is "the product of an informal and non-final process, unless its interpretation is clearly erroneous." *Reid v. Johnson & Johnson*, 780 F.3d 952, 962 (9th Cir. 2015) (deferring to the FDA's interpretations in the agency's warning letters).

*Wilson v. Odwalla, Inc.*, No. 17-2763 DSF (FFMx), 2018 U.S. Dist. LEXIS 137456, at *6 (C.D. Cal. July 30, 2018).

And in this regard, Congress expressly delegated the power to create the guidance in question to the FDA:

> (c) FUNCTIONS OF THE COMMISSION.-The Commission shall conduct a study on, and provide recommendations for, the regulation of label claims and statements for dietary supplements, including the use of literature in connection with the sale

of dietary supplements and procedures for the evaluation of such claims. In making such recommendations, the Commission shall evaluate how best to provide truthful, scientifically valid, and not misleading information to consumers so that such consumers may make informed and appropriate health care choices for themselves and their families.

Dietary Supplement Health Education Act of 1994 (DSHEA), Pub. L. No. 103-417, 108 Stat. 4325 (1994) §12(c).

Thus, this Court should give deference to the FDA guidance regarding what constitutes false and misleading labeling statements and that the required scientific support for such claims must be with regard to the product being sold—a dietary supplement—as opposed to the nutrient it purports to replicate unless the Guidance is "plainly erroneous or inconsistent with the regulations…" The *Greenberg* court engaged in no such analysis of the Guidance because to do so would prevent it from reaching the result it did. But, having ignored this critical step when it refused to give deference to the FDA guidance, the *Greenberg* decision is in contravention of Ninth Circuit, Seventh Circuit, and Supreme Court precedent and thus is not good law in the Seventh Circuit. See, *PLIVA Inc., v. Mensing*, 564 U.S. 604, 613 (2011) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

**IV.    PLAINTIFF'S ALLEGATIONS ABOUT WHAT THE NUTRIENT BIOTIN DOES ARE HIGHLY DETAILED AND PLAUSIBLY ALLEGE WHY BIOTIN THE NUTRIENT HAS NO MORE EFFECT ON HAIR, SKIN, AND NAILS THAN DOES AIR OR WATER.**

Defendants contend that Plaintiff's allegations about what biotin does and does not do are bare assertions. (See Memo, p. 12). These allegations are set forth at paragraphs 46-96 of the Complaint and are anything but bare. They set forth in great detail why, according to well-settled body chemistry science, what biotin the nutrient does and does not do. These scientific facts, if proven true, more than plausibly set forth how and why biotin the nutrient does not and cannot support hair, skin, and nail health any more than does water or air. Moreover, Plaintiff is not

required to file an expert report in her complaint and cite to the scientific literature that supports such allegations. All that is required are facts.

And contrary to Defendants' contention, these detailed allegations regarding biotin the nutrient are not submitted as an example of what Defendants should have put on their labeling. Instead, Plaintiff submitted them to establish what Defendants cannot put on their labels—that their biotin supplements support hair, skin, and nail health.

V.	THE COMPLAINT ADEQUATELY ALLEGES INJURY AND DAMAGES.

Defendant's argument claiming that Plaintiff failed to adequately allege injury/damages is inapposite. The elements of a cause of action under the Consumer Fraud and Deceptive Business Practices Act ("ICFA") are (1) a deceptive act, such as a misrepresentation or concealment of material fact; (2) the defendant's intent to induce the plaintiff's reliance on the deception; (3) a deception that involves trade or commerce; (4) actual damages to the plaintiff; and (5) proximately caused by the deception. *AGFA Corp. v. Wagner Printing Co.*, Case No. 02 C 2400, 2002 U.S. Dist. LEXIS 12911, at *9 (N.D. Ill. July 10, 2002). In the section of their motion attacking Plaintiff's alleged lack of specific allegations, the only element at issue is (4) actual damages to the plaintiff. Defendants argue that Plaintiff has not alleged that she took their biotin or that it did not work for her. (See Memo, pp. 14-15).

But, courts have repeatedly held that under the ICFA injury and damage occurs at the point of purchase and that post-purchase facts about whether the plaintiff used the product or even believed that it worked are irrelevant. See, *Muir v. Playtex Prods.*, LLC, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013); *Miller v. William Chevrolet/Geo*, 326 Ill. App. 3d 642, 654, 260 Ill. Dec. 735, 745, 762 N.E.2d 1, 11 (2001); *Schiffner v. Motorola, Inc.*, 297 Ill. App. 3d 1099, 1101, 232 Ill. Dec. 126, 697 N.E.2d 868, 870 (1998); *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d

278, 856 N.E.2d 542, 550, 305 Ill. Dec. 737 (Ill. App. Ct. 2006) (noting that "diminution in resale value has been held to be a legally cognizable injury under the Act, even where the plaintiff's product has not yet failed."). Defendant's argument that Plaintiff purportedly did not allege that she took the product or any other post-purchase facts are irrelevant to the finding of actual damages under the ICFA as her injury and damage occurred when she bought a product that was not what it was represented to be.

The Illinois cases that Defendant cites for the assertion that a plaintiff must allege the specifics of their use of the product are inapposite. *Castillo v. Unilever United States, Inc.*, No. 20 C 6786, 2022 U.S. Dist. LEXIS 41642, at *13-16 (N.D. Ill. Mar. 9, 2022) (dismissing ICFA claim when Plaintiff did not suffer adverse reaction when it was alleged that the consumer fraud was that the product contained an ingredient that could cause adverse reactions in those that were allergic to it); *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 673 (N.D. Ill. 2016) (dismissing IFCA claim when there is no factual basis to show Plaintiff did not get benefit of the bargain); *Padilla v. Costco Wholesale Corp.*, No. 11 C 7686, 2012 U.S. Dist. LEXIS 87222, at *10-11 (N.D. Ill. June 21, 2012) (dismissing ICFA claim because Plaintiff failed to allege how Defendant's representations were fraudulent).

Unlike the plaintiffs in Defendants' cited cases, Plaintiff alleges with sufficient specificity exactly how the products do not work as represented for anyone and that Plaintiff was damaged just by purchasing a worthless product. (See Complaint, ¶ 111). Plaintiff's allegations of actual damage are similar to those in *Greifenstein v. Estée Lauder Corp.* There, the court sustained the complaint where the plaintiff did not clearly allege that the product did not work for her because she had alleged that it could not work as represented for anyone. No. 12-cv-09235, 2013 U.S. Dist. LEXIS 104659, at *22-23 (N.D. Ill. July 26, 2013). In fact, an ICFA

14

plaintiff need not even allege that the product's performance was deficient for them. See *Schiffner v. Motorola, Inc.*, 297 Ill. App. 3d 1099, 697 N.E.2d 868, 874-76, 232 Ill. Dec. 126 (Ill. App. 1998) (noting that Illinois allows "claims for diminished value of an allegedly defective product without the pleading of any damage to the product or person," holding that cell phone users pleaded actual damages where they alleged that the incomplete disclosure of potential health risks diminished the value of their phones). Thus, Plaintiff has adequately alleged injury and actual damages sufficient to support a claim under the ICFA.[7]

WHEREFORE, the Plaintiff, Tamara Dervin, respectfully requests that Defendants' Motion to Dismiss be denied with prejudice and for any other relief this Court deems just and proper.

Respectfully submitted,

/s/   Stewart M. Weltman

WELTMAN LAW LLC
235 W. Snow Rd.
Baroda, Michigan 49101
sweltman@weltmanlawfirm.com
t: (312)504-1988

/s/   Charles E. Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut St., Ste. 500
Philadelphia, PA 19106
cschaffer@lfsblaw.com
t: (215)592-1500

/s/   Charles LaDuca
CUNEO GILBERT & LADUCA, LLP
*To be admitted pro hac vice*
4725 Wisconsin Ave., NW, Ste. 200
Washington, D.C. 20016
charles@cuneolaw.com
t: (202)789-3960

---

[7] If, however, the Court deems Plaintiff's injury and damages allegations deficient Plaintiff requests leave to amend to correct any such deficiencies.

/s/   Michael McShane
AUDET & PARTNERS LLP
*To be admitted pro hac vice*
711 Van Ness Ave., Ste. 500
San Francisco, CA 94102
mmcshane@audetlaw.com
t: (415)568-2555

/s/   Pasha Vaziri
VAZIRI LAW LLC
111 W. Washington St., Ste. 1500
Chicago, IL 60602
pvaziri@vaziri.law
t: (312)690-2610

**Attorneys for Plaintiff**

**Certificate of Service**

The undersigned, an attorney, hereby certifies that he filed a copy of the foregoing Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Complaint with the Clerk of the Court using its CM/ECF system on April 21, 2022 thereby serving a copy of the same on all persons so entitled.

/s/   Pasha Vaziri