IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TAMARA M. DERVIN, )
on behalf of herself )
and all others similarly situated, )
 )
        Plaintiff )
 )
 ) Case No. 1:21-cv-04215
        v. )
 ) Hon. Charles P. Kocoras
NBTY, INC., a Delaware corporation, and )
NATURE'S BOUNTY, INC., )
a Delaware corporation, )
 )
        Defendants. )
 )

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

                                                               **Page**

INTRODUCTION ........................................................................................................................ 2
ARGUMENT .............................................................................................................................. 3
    I.    The Act explicitly preempts Plaintiff's claim. ................................................................ 3
        A.    The Act authorizes Defendants' label statement about biotin ................................. 3
        B.    The FDA guidance document cannot help Plaintiff state a claim. ........................... 5
            1.    The guidance is irrelevant. ................................................................................ 5
            2.    The guidance is not enforceable ....................................................................... 6
        C.    *Greenberg* was correctly decided. .......................................................................... 7
    II.    Plaintiff's claim fails because she does not allege that she ever took biotin ................... 9
    III.    The dismissal should be with prejudice. ..................................................................... 11
CONCLUSION ......................................................................................................................... 12

**INTRODUCTION**

The main dispute between the parties is about whether a particular provision in the Act and one of its regulations preempts Plaintiff's state-law cause of action. With that in mind, it is passing strange that Plaintiff's Response does not quote or even cite those provisions. Nor does it make any argument about what they mean or why they should not result in preemption.

Instead of mentioning the only statutory and regulatory provisions on point, the Response provides a lengthy block quote from a decision by Justice Butler, early in the first Coolidge Administration, regarding the propriety of using dried apples to make apple cider vinegar. Resp. at 4 (quoting *U.S. v. Ninety-Five Barrels*, 265 U.S. 438 (1924)). When that case was decided, the Dietary Supplement Health and Education Act of 1994—and the key statutory provision on which Defendants' motion turns—was still 70 years away.

The Seventh Circuit has been justly critical of this manner of argument. "The ostrich is a noble animal, but not a proper model for an … advocate." *Gonzalez-Servin v. Ford Motor*, 662 F.3d 931, 934 (7th Cir. 2011). The "ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless." *Id*. (cleaned up). Yet that is the tactic employed by the Response.

It bears repeating, as the motion explained, that the Act specifically authorizes a dietary supplement label to include a statement that "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans." 21 U.S.C. § 343(r)(6)(A); 21 C.F.R. § 101.93(f). Biotin is a nutrient and a dietary ingredient, as the complaint admits, and the supplement labels describe its role with the statement "Supports Healthy Hair, Skin & Nails." Plaintiff argues that when making this statement Defendants were required to qualify it with additional language about the supplements themselves, but the Act does not require any qualification, so a claim based on the assertion it is missing is preempted.

2

In lieu of the statute and regulations, Plaintiff also relies on an FDA guidance document, which for two key reasons cannot help her state a claim. First, the guidance is solely about what evidence will suffice to substantiate a claim, not about what claims the Act authorizes in the first place. Substantiation is not at issue here. As the Response (at 6) explains, "this is not a case based upon an alleged lack of substantiation." Second, the guidance itself states that it merely makes recommendations that need not be followed. Only the Act and its regulations are binding.

The other dispute between the parties is whether it matters if Plaintiff never took the biotin supplements at all. Plaintiff tries to justify her allegations by saying they match those in another case, "where the plaintiff did not clearly allege that the product did not work for her." Resp. at 14. But the decision in that case stated that the allegations of injury and damages were acceptable only because the plaintiff alleged that she "used" a dietary supplement, and it "simply did not work for her at all." Factual allegations to that effect are exactly what is missing from Plaintiff's complaint, which should be dismissed with prejudice.

## ARGUMENT

### I. The Act explicitly preempts Plaintiff's claim.

#### A. The Act authorizes Defendants' label statement about biotin.

The central argument of the Response is that Defendants may not accurately state that biotin the nutrient "does support hair, skin, and nail health." Plaintiff contends that this accurate statement "suggests that the product containing this supplemental form of biotin will do the same." Resp. at 5. Plaintiff argues that in order to avoid being "misleading and deceptive," Defendants must add "qualifying language indicating that statement only applies to biotin the nutrient." *Id*.

The Act preempts that claim. It authorizes "a statement for a dietary supplement" that "describes the role of a ***nutrient or dietary ingredient*** intended to affect the structure or function

3

in humans." 21 U.S.C. § 343(r)(6)(A) (emphasis added); *see also* 21 C.F.R. § 101.93(f) (same). Under the Act and FDA's regulations, "a structure/function claim addresses only the general role of an ingredient/nutrient on the human body. It does not purport to convey the product's health impact on the general population." *Greenberg v. Target*, 985 F.3d 650, 655-56 (9th Cir. 2021). Nor does it require a supplement's label to use qualifying language to indicate that a structure/function claim is about a nutrient or dietary ingredient. By seeking to require that qualifying language for biotin, which the complaint admits is a nutrient and dietary ingredient (*e.g.*, Compl. ¶¶ 30, 32, 37, 41, 49), Plaintiff is trying to use state law to impose a requirement that is "not identical to" the Act's requirements. That is precisely what the Act does not allow. 21 U.S.C. § 343-1(a)(5).

Ignoring the language of the Act and regulations, and instead treating structure/function claims as statements about supplements rather than nutrients, would bizarrely transform most or all of them into misleading statements. As the Ninth Circuit explained, "only a fraction of people suffers a deficiency of any nutrient. For example, according to [plaintiff's] reasoning, a product that bears the true statement that 'vitamin C boosts immunity' would be misleading because most people are not vitamin C deficient and would not benefit from the product. … In short, under [plaintiff's] logic, virtually any structure/function claim for dietary supplements would potentially be misleading to the great majority of people." *Greenberg*, 985 F.3d at 656. "Simply put, manufacturers may make structure/function claims about a nutrient's general role on the human body without disclosing whether the product will provide a health benefit to each consumer." *Id*.

Plaintiff's Response does not try to rebut *any* of the points made above. In fact, it studiously avoids quoting the relevant statutory and regulatory language. It even treats the topic

4

of structure/function claims as verboten. That term appears just twice in the entire Response, once in a quote from *Greenberg* and once in a quote from an FDA guidance document. Resp. at 2, 8.

### B. The FDA guidance document cannot help Plaintiff state a claim.

The Response cites no cases, aside from three district court decisions that *Greenberg* overruled (*id*. at 2 n.1), supporting its assertion that a structure/function claim is a statement about a supplement. It cites none because there are none. Instead, the Response relies exclusively on the FDA guidance document, but that guidance cannot save Plaintiff's claim from being dismissed due to preemption.

#### 1. The guidance is irrelevant.

The guidance's only subject is how to substantiate a label claim: "This guidance document is intended to describe the amount, type, and quality of evidence FDA recommends a manufacturer have to substantiate a claim." *Id.* Ex. B at 2. But there is **no** dispute in this case about how to substantiate Defendants' label claim, because Plaintiff admits "***this is not a case based upon an alleged lack of substantiation.***" *Id.* at 6 (emphasis added); *see also* Mot. at 5-6 & n.2; Compl. ¶ 95. Guidance about how to substantiate is not relevant when substantiation is not in doubt. That is presumably why the Ninth Circuit described the guidance as "not on-point." *Greenberg*, 985 F.3d at 656 n.3. No court has ever cited it for Plaintiff's idea that a structure/function claim is a statement about supplements.

In a portion of the guidance that Plaintiff ignores, it states, "This guidance does not discuss the criteria to determine whether a statement about a dietary supplement is a structure/function claim." Resp. Ex. B at 18 n.4. For that topic, the guidance refers to two other sources. One source is a different FDA guidance document, which confirms that the Act and

5

regulations allow supplement labels to make "statements that describe the role of a ***nutrient or dietary ingredient*** intended to affect the structure or function in humans."[1]

The other source is the final rule that published the structure/function regulation now codified at 21 C.F.R. § 101.93. The final rule states unequivocally, "FDA agrees that dietary supplements may carry structure/function statements concerning the relationship of ***nutrients*** and the structure or function of the body, such as 'calcium builds strong bones.'" Final Rule, 65 Fed. Reg. 1000, 1008 (2000). Thus, FDA confirmed what the Act already says: a structure/function claim is a statement about a nutrient, not a statement about a supplement.

The final rule also confirms that a statement such as "calcium builds strong bones" or "helps support cartilage and joint function" is "a permissible structure/function claim." *Id*. at 1008, 1016-17. Those claims cannot be distinguished from the claim in the present case: "Supports Healthy Hair, Skin & Nails." As a structure/function claim, it is specifically authorized by the Act, and a state-law claim challenging it is preempted.

### 2. The guidance is not enforceable.

The guidance itself states that "[i]t does not create or confer any rights for or on any person" and "do[es] not establish legally enforceable responsibilities." Resp. Ex. B at 1-2. "Instead, guidances describe the Agency's current thinking on a topic and should be viewed only as recommendations." *Id*. at 2. Or, as FDA's regulations put it: "*Are you or FDA required to follow a guidance document?* … No." 21 C.F.R. § 10.115(d). Or, as *Greenberg*, 985 F.3d at 656 n.3, put it: the guidance is "not binding on this Court." *See also Ferrari v. Vitamin Shoppe*, 2022

---

[1] Small Entity Compliance Guide on Structure/Function Claims (January 2022), *available at* www.fda.gov/regulatory-information/search-fda-guidance-documents/small-entity-compliance-guide-structurefunction-claims (emphasis added).

WL 974048, at *5 n.7 (D. Mass.) (agreeing with *Greenberg* that FDA's substantiation guidance is "off-point and non-binding").

That alone kills the idea that Plaintiff may use the guidance to state a claim against Defendants. The guidance establishes no legally enforceable responsibilities, and it cannot trump the Act and regulations. Only the Act and regulations have the force of law, but Plaintiff has no argument under them.

Plaintiff tries to salvage the guidance by citing two Seventh Circuit decisions which, Plaintiff contends, show that informal agency guidance is "to be accorded deference and followed" if it is "well-wrought and thorough." Resp. at 11. But those cases did not address FDA guidance, and they did not address agency guidance that explicitly stated it created no rights, was not legally enforceable, and so on. Still, in both cases, the Seventh Circuit found that the agency guidance was "not entitled to deference," and the court did not follow it. *Vulcan Constr. Materials v. Fed. Mine Safety and Health Review Comm'n*, 700 F.3d 297, 312 (7th Cir. 2012); *Wells Fargo Bank v. Lake of the Torches Econ. Dev.*, 658 F.3d 684, 696 (7th Cir. 2011).

A more recent and factually similar decision is *Vanzant v. Hill's Pet Nutrition*, 934 F.3d 730 (7th Cir. 2019). In that case, the Seventh Circuit refused to allow a party to rely on an FDA "Compliance Policy Guide," which was not on point and did "not establish any legally enforceable responsibilities, and it is not binding on either the FDA or the public." *Id*. at 737. It is the same here.

### C. *Greenberg* was correctly decided.

The success of Plaintiff's Response and this lawsuit depends on convincing this Court that *Greenberg* is an "outlier" decision that reasoned "absurdly," was "wrongly decided," and even, "in one fell swoop … eliminated 60 years of consumer protection." Resp. at 2, 3, 4, 11.

7

That is a tall set of accusations against a decision that no court has ever suggested should have been decided the other way.

A reader of the Response may get the impression that *Greenberg* is the only decision about structure/function claims, but that is only because the Response did not mention the others. In *Kaufman v. CVS Caremark*, 836 F.3d 88 (1st Cir. 2016), for example, the First Circuit addressed state-law causes of action alleging that the structure/function claim "supports heart health" on a Vitamin E supplement label was misleading. The opinion explains that "any nutrient or ingredient that, for example, the heart needs might be described as supporting heart health, even if taking the supplement form of the nutrient does nothing to improve the health of one's heart." *Id*. at 96. In *Kaufman*—unlike the present case, as explained above—substantiation was disputed and, the court found, required factfinding.

A more recent decision, released after Defendants' motion but a few weeks before Plaintiff filed the Response, is *Ferrari,* 2022 WL 974048 at *1. That decision addressed structure/function claims such as "helps support muscle growth and recovery." It explains, "[p]ursuant to the structure/function rule, a manufacturer may place a broad statement about the general effect of a dietary supplement ***ingredient*** on a supplement label, even if the dosage of the supplement in the product may not actually product the desired result." *Id*. at *3 (emphasis added). *Ferrari* agreed with *Greenberg* that structure/function claims "refer only to a nutrient or ingredient within a product, and not to the product as a whole." *Id*. at *4. Structure/function claims "describe the properties of a nutrient, rather than promising specific results." *Id*. (citing the final rule). *Ferrari* concluded that what matters is the nutrient's "general role in the body," even if "most consumers would not benefit" from the supplement. *Id*. at *6 (citing *Greenberg*). In short, *Greenberg* is no outlier.

8

Plaintiff's attack on *Greenberg* begins off note. Plaintiff argues that the Ninth Circuit, in the unpublished and non-precedential decision in *Seegert v. Relax Sundown*, 2022 WL 301553 (9th Cir.), somehow "rejected" *Greenberg*. Resp. at 2 n.2. That is completely wrong. *Seegert* did not even mention *Greenberg*, much less disagree with anything in *Greenberg*. It held that there was a dispute about substantiation and about the admissibility of expert testimony on that topic. *Seegert*, 2022 WL 301553, at *2. Here, again, substantiation is not disputed.

Next Plaintiff argues that the decision in *Kroessler v. CVS Health*, 977 F.3d 803, 809 (9th Cir. 2020), provided an "additional gloss" on the Act. If so, it is not a gloss that helps Plaintiff. *Kroessler*, which predates *Greenberg*, held that when a complaint cites "scientific studies [that] directly refute" structure/function claims, the complaint cannot be dismissed because substantiation is in dispute. *Id*. at 812. *Greenberg* even cited *Kroessler* for that point. *Greenberg*, 985 F.3d at 657. Once again, substantiation is not disputed here, and the complaint concedes that Plaintiff lacks scientific studies disproving the biotin structure/function claim. Compl. ¶¶ 93-94.

In short, Plaintiff's arguments cast no doubt on the holding of *Greenberg*, which was dictated by a straightforward reading of the Act and regulations. Plaintiff does not dispute that the supplement label at issue here met all three of the Act's requirements as applied by *Greenberg* and other cases, so Plaintiff's claim is preempted (and also fails under 815 ILCS 505/10b(1)), and this case should be dismissed

## II. Plaintiff's claim fails because she does not allege that she ever took biotin.

Plaintiff argues that it is "irrelevant" whether she "used the product or even believed that it worked." Resp. at 13. She claims that her "allegations of actual damages are similar to those in *Greifenstein v. Estee Lauder* … where the plaintiff did not clearly allege that the product did not work for her." *Id*. at 14.

That is false—and Plaintiff's counsel knows it, because he also represented the plaintiff in that case. Greifenstein alleged that she "purchased *and used* Plantscription serum" and found that it did "not work as advertised." Complaint ¶¶ 5, 37, *Greifenstein v. Estee Lauder*, No. 12-cv-09235 (N.D. Ill.), Dkt. 1 (emphasis added). Judge Chang took note, holding that her allegations were sufficient only "[i]n light of the fact that Greifenstein alleges that the serum *simply did not work for her at all.*" *Greifenstein v. Estee Lauder*, 2013 WL 3874073, at *7 (N.D. Ill.) (emphasis added). In a later opinion, Judge Durkin cited *Greifenstein* and quoted that holding when he explained, "In cases where the plaintiff's claim of financial injury under the ICFA has been upheld as the basis for damages, the complaint also alleged that the plaintiff experienced the product not working." *Spector v. Mondelez Int'l*, 178 F. Supp. 3d 657, 673 (N.D. Ill. 2016). But there is no such allegation here.

Plaintiff also argues that "'diminution in resale value has been held to be legally cognizable injury under the Act, even where the plaintiff's product has not yet failed.'" Resp. at 14 (quoting *White v. DaimlerChrysler*, 856 N.E.2d 542, 550 (Ill. App. Ct. 2006)). But *White* was about a car. The complaint in the present case does not allege a diminution in resale value—and how could it, given that this case is about a dietary supplement?

The motion cited *Padilla v. Costco Wholesale*, 2012 WL 2397012 (N.D. Ill.), a case that dismissed claims about dietary supplements because the plaintiff "fails to include any allegations that the product did not work for him." *Id*. at *3. Plaintiff purports to distinguish *Padilla* and the other cases the motion cited on the ground that in the present case, unlike in those cases, "Plaintiff alleges with sufficient specificity exactly how the products do not work as represented for anyone and that Plaintiff was damaged just by purchasing a worthless product." Resp. at 14. But those are exactly the same allegations that were made in *Padilla*.

10

The complaint in *Padilla* alleged that the dietary supplements were "not an effective remedy," had "no efficacy" at all, and "could not provide the represented health benefits." Compl. ¶¶ 5, 17, *Padilla v. Costco Wholesale*, No. 11 C 7686 (N.D. Ill.), Dkt. 1. The plaintiff alleged that "[e]very purchase … was tainted with Defendant's deceptions," and he and the rest of the proposed class "would not have purchased the … products" if they had known the truth. *Id*. ¶¶ 11, 17, 31. They were therefore "damaged in their purchases of these Products." *Id*. ¶ 32; *see also id*. ¶ 38.

Once again, the Response's argument was false. And once again, Plaintiff's counsel knows it. He signed the complaint as the attorney for the plaintiff in *Padilla*.

The Court will note that, even in the Response, Plaintiff *still* does not argue that she had a need for the product, used it, experienced it not working, and so on. That failure makes it difficult to avoid the impression that this is a fake case in which a plaintiff bought a product just to set up a lawsuit for an attorney who is determined to avenge his loss in *Greenberg*. This Court should not allow it. There are enough real lawsuits without attorneys using this sort of artifice to spawn new ones. This case should be dismissed.

### III. The dismissal should be with prejudice.

Plaintiff does *not* request leave to replead in the event the complaint is dismissed because federal law preempts it—and rightly so, because no amendment could change the fact that the label makes a structure-function claim that federal law specifically authorizes. If the dismissal is based on preemption, it should be with prejudice.

So too if the dismissal is based on Plaintiff's failure to allege injury and damages. Here, the Response does include a request for leave to amend, in a footnote on the last page, but that request should be denied because Plaintiff "has failed … to provide a proposed amended complaint or otherwise to explain how … [an] amended complaint would cure the deficiencies

11

identified" in her current complaint. *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015). As explained above, the Response does not even attempt to articulate any facts that could allow Plaintiff to state a claim. It remains conspicuously silent on the issue, so Plaintiff has not shown that she is able to replead. The Court should enter judgment for Defendants.

## CONCLUSION

The Court should dismiss this case with prejudice.

Respectfully submitted,

Dated: May 5, 2022

By: */s/ Amanda L. Groves*
Amanda L. Groves
Scott P. Glauberman
Ross J. Corbett
Nicholas P. Matosian
Winston & Strawn LLP
35 W. Wacker Dr.
Chicago, Illinois 60601
Telephone: (312) 558-7883
Fax: (312) 558-5700
AGroves@winston.com
SGlauberman@winston.com
RCorbett@winston.com
NMatosian@winston.com

*Counsel for Defendants*

CERTIFICATE OF SERVICE

    The undersigned attorney hereby certifies that on May 5, 2022, she caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Northern District of Illinois of the United States District Court using the CM/ECF served on the following individuals:

Stewart M. Weltman
Weltman Law LLC
235 W. Snow Rd.
Baroda, MI 49101

Pasha Vaziri
Vaziri Law LLC
111 W. Washington St., Ste. 1500
Chicago, IL 60602

Charles E. Shaffer
Levin Sedran & Berman LLP
510 Walnut St., Ste. 500
Philadelphia, PA 19106

Charles LaDuca
Cuneo Gilbery & LaDuca, LLP
4725 Wisconsin Ave., NW, Ste. 200
Washington, DC 2016

Michael McShane
Audet & Partners LLP
711 Van Ness Ave., Ste. 500
San Francisco, CA 94102

                                                                By: */s/Amanda L. Groves*
                                                                     Amanda L. Groves