# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

TAMARA M. DERVIN, on behalf of herself )
and all other similarly situated, )
                                Plaintiff, )
                                    v. )      21 CV 4215
NBTY, INC., et al., )
                              Defendant. )

## **MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants NBTY, Inc. and Nature's Bounty, Inc.'s (collectively, "Defendants") Motion to Dismiss Plaintiff Tamara M. Dervin's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Dervin brings this action alleging Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, by representing that their biotin supplement products "Support[] Healthy Hair, Skin & Nails." Dervin contends this representation is false because biotin the nutrient does not support healthy hair, skin, and nails, and, regardless, people consume enough of it in their normal diet so the supplement is unnecessary. For the following reasons, Defendants' Motion to Dismiss is granted.

## BACKGROUND

On August 9, 2021, Dervin filed a one-count complaint alleging Defendants violated the ICFA. Dkt. # 1. On March 30, 2022, Defendants moved to dismiss Dervin's original complaint with prejudice for failure to state a claim on two bases: (1) federal law preempted Plaintiff's IFCA claim, and (2) the complaint did not sufficiently allege an injury. Dkt. # 32; Dkt. # 33. On June 14, 2022, the Court granted Defendants' Motion to Dismiss for failure to plead an injury and did not reach the preemption issue. Dkt. # 37.

Dervin filed her Amended Complaint on July 18, 2022, adding allegations regarding her injury. Dkt. # 39. On August 3, 2022, Defendants filed their Motion to Dismiss Amended Complaint and Agreed Statement Regarding Briefing, which stated that Defendants now seek to dismiss Dervin's IFCA claim based on federal preemption only.[1] Dkt. # 40, ¶ 5. Furthermore, because the allegations Dervin added in the Amended Complaint related solely to the issue of injury, and because "the allegations and legal issues related to preemption have not changed," the parties agreed that the Court could rule on preemption based on the prior motion to dismiss briefing. *Id.*, ¶ 6.

---

[1] Although Defendants no longer challenge Dervin's IFCA claim on the basis of injury, the Court questions whether Dervin's additions to the Amended Complaint sufficiently plead an injury. She alleges that she was injured because she did not see any changes to her hair, skin, or nails, and that regardless of perceptible results, "she was falsely led to believe that the [Biotin Products] would help 'support' her hair health – which does not necessarily mean that she would see any changes as opposed to her hair remaining the same." Dkt. # 39, ¶ 118. But therein lies the problem—the fact that Dervin did not perceive any changes to her hair, skin, or nails does not mean that her hair, skin, and nails were not "supported" by the Biotin Products.

The Court granted the parties' request to rule on the present motion based on the prior briefing. Dkt. # 41.

The following facts come from the Amended Complaint and are assumed true for the purpose of this Motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Dervin's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Defendants manufacture, market, sell, and distribute biotin dietary supplements under the "Nature's Bounty" brand, including (1) Biotin 5000 mcg; (2) SUPER POTENCY Biotin 5000 mcg; (3) QUICK DISSOLVE Biotin 5000 mcg; (4) Biotin 10,000 mcg rapid release liquid soft gels; and (5) Biotin 10,000 mcg Health & Beauty rapid release liquid softgels (collectively, the "Biotin Products").

The sole active ingredient in the Biotin Products is a supplemental form of biotin. The label on the front of each of the Biotin Products states: "Supports Healthy Hair, Skin & Nails." According to Dervin, who purchased the Biotin Products, neither biotin the nutrient nor the supplemental form of biotin contained in the Biotin Products support healthy hair, skin, and nails.

Biotin is a colorless, water-soluble B vitamin found in foods like fruit, vegetables, cereal, meat, and fish. It is an essential vitamin that plays a key role in our metabolism, without which we would die. Humans cannot synthesize biotin on their own but can recycle it in case of insufficient dietary intake.

3

Per the Institute of Medicine of the National Academy of Science ("IOM") and the FDA, the recommended daily intake of biotin is 30 mcg.[2] The IOM recommends that pregnant women get 35 mcg of biotin per day. The general population ingests between 35 and 75 mcg of biotin per day from the foods they eat. If more biotin than needed is ingested, the body excretes the excess biotin and does not use it. The Biotin Products come in 5,000 mcg and 10,000 mcg doses, which are called "pharmacologic" doses or "mega-doses."

Biotin deficiency has not been reported in the general population. The supplemental form of biotin that constitutes the Biotin Products is superfluous for most people because we need only a finite amount of biotin, which is more than amply obtained from regular diet and biotin recycling.

Supplemental biotin has, however, been shown to be beneficial for some. A condition called frank biotin deficiency occurs when a person fails to obtain sufficient free biotin either from their diet or through recycling, and it results in severe disruption of specific metabolic pathways. Frank biotin deficiency can occur in several ways. A small percentage of the population has biotinidase deficiency, a biotin metabolism disorder that prevents the body from recycling biotin and from freeing protein-bound dietary biotin. For these individuals, pharmacological doses of biotin at the mega-dose quantities sold by Defendants have been shown to ameliorate or prevent the

---

[2] The IOM generally recommends an "adequate intake" for vitamins that is an overestimate of daily need, to ensure that people are getting a sufficient amount.

development of symptoms. Some people also develop frank biotin deficiency by not getting enough biotin in their diet, such as individuals who were administered long-term intravenous feeding that was devoid of biotin and infants fed on formula that did not contain biotin. For them, this was readily corrected by including biotin in their diet, *i.e.*, in their feedings or formula. Frank biotin deficiency can also occur if one consumes an extremely large amount of avidin, a protein found in raw egg whites, which can make biotin unavailable to the body.

The hypothesis that biotin the nutrient supports hair and skin health was initially premised on observations that one of the initial symptoms for some people with frank biotin deficiency may be hair and skin problems. Poor nail health is not one of the initial symptoms—the hypothesis that biotin affects nail health appears to have originated in "very old" observations of farm animals whose feed had insufficient biotin and whose brittle hooves were remedied by putting supplemental biotin in their feed.

In a 1940s experiment, researchers induced frank biotin deficiency in a clinical setting by feeding individuals large quantities of avidin, thereby severely reducing their available free biotin. The individuals began to develop symptoms of frank biotin deficiency after about six weeks of this regimen, which for some, included hair thinning and skin problems.

But in a later study, researchers attempted to induce what they hypothesized to be marginal biotin deficiency in healthy subjects by feeding the subjects large amounts of raw egg whites (smaller amounts than used in the 1940s study) to reduce the

availability of free biotin. Even though the researchers believed they had induced some degree of "marginal" biotin deficiency, none of the subjects showed any hair, skin, or nail problems.

Some infants with untreated biotinidase deficiency exhibit hair loss and rashes.

Defendants have not conducted any clinical trials to prove the veracity of their labeling claims, and there have been no clinical trials testing whether supplemental biotin helps support hair, skin, or nails.

A few early case studies (not randomized, controlled clinical trials) claimed that supplemental biotin helped treat rare conditions such as "uncombable hair" syndrome, a rare genetic disorder that occurs in one in 100,000 people, or people with brittle nails. But these case studies have been consistently debunked for years as unreliable and not meeting the standards of scientific reliability.

Other hypotheses about people who may experience marginal biotin deficiency surfaced decades ago but were never followed by the required confirmatory research. They include people on anticonvulsants, women smokers, and chronic alcoholics. Since then, it has become clear that the need for biotin in the general population is finite and more than fully satisfied through diet and biotin recycling. These hypotheses, like marginal deficiency, have been abandoned and are no longer being researched.

Dervin alleges that Defendants' representation on the Biotin Products' label, "Supports Healthy Hair, Skin & Nails", is false and misleading. She further claims that

she would not have purchased the Biotin Products if she had understood "the truth about Defendants' misrepresentations."

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.,* 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well-pleded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

When claiming fraud, a party "must state with particularity the circumstances constituting fraud []. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The requirement that fraud be pled with particularity "ensures that plaintiffs do their homework before filing suit and protects defendants from baseless suits that tarnish reputations." *Pirelli Armstrong Tire Corp. Retiree Med. Ben Trust v. Walgreen Co.*, 631 F.3d 436, 439 (7th Cir. 2011). This requirement is not rigid, and what must be alleged will vary depending on the facts of the case. *Id*. at 442. The heightened pleading standard applies to all allegations of fraud (such as misrepresentation), not merely claims labeled fraud. *Id*. at 447.

## **DISCUSSION**

To adequately plead a private cause of action under the ICFA, a plaintiff must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002) (citing *Zekman v. Direct Am. Marketers*, 182 Ill. 2d 359, 373 (1998); *Connick v. Suzuki Motor Co*., 174 Ill. 2d 482, 501 (1996)). A complaint alleging a violation of the ICFA must be pled with the same particularity and specificity as required for common law fraud. *Connick*, 174 Ill. 2d at 501; *see also Pirelli*, 631 F.3d at 441 ("When a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies.")

Defendants move to dismiss Dervin's Amended Complaint with prejudice for failure to state a claim. They argue that the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, preempts Dervin's state law claim under the ICFA because the FDCA preempts any state requirements that are "not identical to the requirement of section 343(r)." Section 343(r)(6) of the FDCA specifically authorizes certain statements about dietary supplements, including "structure/function" claims that "describe[] the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, [or] characterize[] the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function." 21 U.S.C. § 343(r)(6)(A).

A structure/function claim is solely about the nutrient's role in the body; it does not purport to convey the product's health impact on the general population. The Biotin Products are not intended to diagnose, treat, cure, or prevent any disease.

Much of Defendants' briefing centers on a Ninth Circuit case, *Greenberg v. Target*, 985 F.3d 650, 652–53 (9th Cir. 2021),[3] in which Dervin's counsel represented the plaintiff in a nearly identical case challenging the defendants' representation that their biotin product "helps support healthy hair and skin." The Ninth Circuit affirmed that the plaintiff's state law claims were preempted by the FDCA, and that summary

---

[3] Defendants previously moved for attorney sanctions under Fed. R. Civ. P. 11(b) arguing that Dervin's counsel made contradictory and false factual assertions in this case as compared to in *Greenberg* and other similar cases. Dkt. # 17. The Court denied that motion without prejudice. Dkt. # 31.

judgment in the defendants' favor was warranted. *See id.* at 655–56. The *Greenberg* plaintiff argued the statement was "misleading because most people obtain enough biotin from their regular diets and thus this product provides no health benefit for them." *Id.* at 653. Although strikingly similar to this case, one key difference is that in *Greenberg*, the plaintiff "agree[d] that biotin is a nutrient that supports healthy hair and skin." *Id*. It was undisputed that the defendants had "substantiation that biotin 'helps support healthy hair and skin,' and that statement is truthful and not misleading." *Id*. at 655. The plaintiff's claim that the statement was nevertheless deceptive and misleading because the biotin product "benefits only a tiny percentage of the public with biotin deficiency" was therefore preempted by the FDCA. *Id*. at 655–56.

Relying on *Greenberg*, Defendants assert that "a structure/function claim . . . refers to the *ingredient's* general role in the human body, not the *product's* impact on a person's health" and that "manufacturers may make structure/function claims about a nutrient's general role in the human body without disclosing whether the product will provide a health benefit to each consumer." Dkt. # 33, at 8 (emphasis in original).

The FDCA authorizes structure/function statements about dietary supplements when the claim: (1) is substantiated; (2) includes a disclaimer stating that the FDA has not evaluated the claim and the product is not intended to cure or treat a disease; and (3) is not a disease claim. 21 U.S.C. § 343(r)(6)(B)–(C). Defendants assert all three requirements are satisfied here, and thus Dervin's IFCA claim is preempted. But state law claims will not be preempted if a structure/function claim is factually false or lacks

10

substantiation. *Greenberg*, 985 F.3d at 657 (citing *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 812 (9th Cir. 2020) ("Kroessler alleges that CVS's glucosamine claims are false because scientific studies directly refute them.")).

Dervin alleges that Defendant's structure/function claim is factually false, rather than that the claim lacks substantiation. For example, the Amended Complaint states that "there is no clinical evidence that biotin the nutrient supports hair, skin, or nails or that problems with hair, skin, or nails are caused by a deficiency in biotin" and that those allegations are "*not intended to assert a lack of substantiation claim*." Dkt. # 39, ¶¶ 94–95 (emphasis added). "Rather, they further corroborate that other science, such as body chemistry and other science plead herein, amply provides the answer to the question of whether or not Defendants' products work as represented and provide the promised health benefits, and that answer is a resounding 'no.'" *Id.*, ¶ 95. And none of the causes of hair, skin, or nail problem "have been connected to any purported deficiency in biotin." *Id*. Furthermore, Dervin's response to the Motion to Dismiss states that "this is not a case based upon an alleged lack of substantiation but rather affirmatively sets forth why the label representations are false or misleading." Dkt. # 35, at 6.

Because Dervin alleges that Defendants' structure/function claim is factually false, it is not preempted. We must still ask, however, whether Dervin has sufficiently pleaded her claim that Defendants' statement is factually false. We find that she has not.

All of Dervin's allegations regarding this issue focus on the supposed lack of definitive proof that biotin supports healthy hair, skin, and nails. But that is not the essence of Dervin's claim, which is that Defendants' statement about biotin is affirmatively *factually false*. Dervin alleges no factual support for that. The closest she comes to doing so is alleging that some researchers attempted to induce marginal biotin deficiency in healthy subjects, and that none of the subjects showed any signs of hair, skin, or nail issues. In that study, the researchers fed the subjects large amounts of raw eggs whites (or avidin) to reduce the availability of free biotin in their systems. But that does not necessarily mean that it is factually false to say that biotin supports healthy hair, skin, and nails. Rather, to say so is entirely speculative. *See Twombly*, 550 U.S. at 555 (complaint must "raise a right to relief above the speculative level.").

This is especially true in light of the rest of the Amended Complaint. Dervin also describes an earlier experiment, where the researchers fed their subjects an even larger quantity of raw egg whites, which severely reduced their available free biotin and *did* cause symptoms of frank biotin deficiency which included, in some cases, hair thinning and skin problems.[4] Even without the Amended Complaint's inclusion of this earlier experiment, there are insufficient facts alleged to allow the Court to infer that Defendants' statement is false. *See Iqbal*, 556 U.S. at 662. The idea that it is factually

---

[4] There are multiple other examples in the Amended Complaint of allegations actually supporting the idea that biotin supports healthy hair, skin, and nails. For instance, the Amended Complaint alleges that supplemental biotin is indeed beneficial for people with frank biotin deficiency, for which the symptoms can be hair and skin problems. And supplemental biotin helped treat conditions such as "uncombable hair" or brittle nails.

false to say that biotin supports healthy hair, skin, and nails is simply not supported by the allegations of the Amended Complaint.

Dervin also alleges that Defendants' statement on the Biotin Products is false because "our needs for biotin are finite and we obtain more biotin than we need from the foods we eat such that the supplemental biotin Defendants sell are superfluous, unneeded, and worthless." Dkt. # 39, ¶ 5. Again, this is controverted by the Amended Complaint's assertions that some people, albeit a small number, do indeed suffer from biotin deficiencies. We reject Dervin's position that just because the general population does not suffer from a biotin deficiency, it is incorrect to say that biotin supports healthy hair, skin, and nails—that is illogical.[5] And we agree with the court in *Greenberg* that "the plain language of the FDCA and its implementing regulations clarifies that a structure/function claim addresses only the general role of an ingredient/nutrient on the human body. It does not purport to convey the product's health impact on the general population, contrary to [Dervin's] assertion." *See Greenberg*, 985 F.3d at 655–56. The Biotin Products do not say "everyone will benefit from these supplements because everyone has a biotin deficiency and needs supplemental biotin in order to have healthy hair, skin, and nails." It just says that biotin supports health hair, skin, and nails. And nothing in the Amended Complaint demonstrates that that statement is false.[6]

---

[5] And even if no one in the world suffered from a biotin deficiency, the logical result would still not be that "biotin supports healthy hair, skin, and nails" is a false statement.

[6] Although we are not dealing with the issue of substantiation, the logic applied in *Greenberg* is instructive here. For example, "a vitamin product can tout that 'calcium supports strong bones'

The Court also rejects Dervin's illogical arguments that (1) a biotin deficiency cannot cause hair, skin, and nail problems just because other diseases or conditions also cause hair, skin, and nail problems and (2) biotin the nutrient has only an "indirect" link to hair, skin, and nail health because a lack of biotin interferes with metabolism, and it is the metabolism disruption that causes symptoms like hair and skin issues.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. # 40) is granted. Civil case terminated. It is so ordered.

Dated: September 26, 2023

_____
Charles P. Kocoras
United States District Judge

---

because scientific evidence backs that claim, even if not everyone needs or benefits from more calcium." *Greenberg*, 985 F.3d at 652.